**PAUL OIL COMPANY, INC.,**
**a California Corporation,**
**Plaintiff–Appellant,**

v.

**FEDERATED MUTUAL INSURANCE COMPANY, a Minnesota Corporation,**
**Defendant–Appellee.**

No. 97–16190.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 16, 1998.

Decided Sept. 8, 1998.

Lori T. Okun, Greben & Associates, Sacramento, California, for plaintiff-appellant.

Thomas H. Crouch, Charles E. Spevacek, Jeffrey M. Thompson, Meagher & Geer, Minneapolis, Minnesota, for defendant-appellee.

Before: REINHARDT, NOONAN, and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Paul Oil Company, Inc. (Paul Oil), a California corporation, appeals the grant of summary judgment against it in its suit against Federated Mutual Insurance Co. (Federated), a Minnesota corporation. The district court, after first denying Federated's motion for summary judgment, reconsidered, finding that Paul Oil's attempt to defeat the motion had depended upon a sham. The district court also denied Paul Oil's offer of additional testimony on the ground that Paul Oil had been disingenuous as to the availability of the witness whose testimony it belatedly attempted to offer. Affirming the district court, we write to call attention to the duties of counsel to the court.

### FACTS

Paul Oil is a family-owned business whose president and CEO since 1974 has been Ross Barton Paul (Bart Paul). The company is a jobber of Shell Oil products. In 1985 it leased property on Highway 99 in Livingston, California from Leonard and Shirley Blevins. The property had previously been used for a convenience store and gas station. It contained one underground gasoline storage tank holding 8,000 gallons, two tanks holding 5,000 gallons and a 4,000 gallon tank holding diesel fuel.

On May 24, 1986 Paul Oil entered into several insurance contracts with Federated, including a pollution liability insurance poli-

cy. On the first page of the policy in type much larger than the rest of the text a heading announced: "THIS IS A CLAIMS MADE POLICY—PLEASE READ CAREFULLY." The first paragraph under this heading said the company would pay compensatory damages for bodily injury or property damage provided that "(1) such bodily injury or property damage is caused by a pollution incident which commences subsequent to the retroactive date shown in the declarations of this policy; and (2) the claim for such damages is first made against the insured during the policy period and reported to the company during the policy period or within fifteen days after its termination." The policy continued: "A claim shall be deemed to have been made only when suit is brought or written notice of such claim is received by the insured." The "retroactive date" was the same as the date the policy was entered into, May 24, 1986.

Federated issued similar policies to Paul Oil for May 24, 1988 through May 24, 1989 and for May 24, 1989 through August 1, 1989 when Paul Oil cancelled.

Paul Oil tested the tanks on the property and in June 1986 found a leak in a supply line between the tank and a pump. It was due to a faulty pipeline coupling. Paul Oil replaced the coupling and cleaned out the soil. The company notified the Merced County Environmental Management Department, which approved its handling of the problem. The amount of soil removed was approximately five cubic yards. Paul Oil was receiving deliveries three times a week and doing from 60,000 to 80,000 gallons of business per month. It kept a tight inventory control of the gasoline in the tanks by doing daily stickings. The company was unaware of any other leaks or losses from the tanks. Occasionally there were small losses when a driver drove away from a pump with the nozzle from the tank still in his car.

In 1989 the California Department of Transportation began studies for a bypass in Livingston and made an environmental investigation that revealed at least 20,000 gallons of petroleum product in the ground that apparently had come from the site occupied by Paul Oil. On November 14, 1990 the district attorney of Merced County notified Paul Oil and prior occupiers of the site of alleged code violations that had caused the problem. In 1992 Paul Oil was sued by the Bergers, adjacent land owners, who asserted that their land had been contaminated from the Paul Oil site. In 1994 the California Regional Water Quality Control Board sent Paul Oil a Clean Up and Abatement Order. The order noted that the gasoline contamination dated back to 1978 and the total amount in the soil was between 37,000 and 50,000 gallons.

Paul Oil tendered these matters to Federated for defense and indemnification. Federated denied any duty to defend or to indemnify, noting that none of the claims had been made while the policies were in effect.

## PROCEEDINGS

On March 29, 1995 Paul Oil filed suit against Federated in the Superior Court for Merced County. The suit referred generally to "policies" issued by Federated which gave rise to obligations that Federated was not fulfilling. The suit sought declaratory relief, damages for breach of contract, and damages for breach of the implied covenant of good faith. On the ground of diversity Federated removed the suit to the federal district court for the Eastern District of California.

Both sides took deposition testimony, Federated taking inter alia the deposition of Bart Paul. Both sides also served each other with interrogatories. On August 14, 1995 Federated moved for summary judgment. At a hearing on the motion the court asked Paul Oil's counsel to identify any record evidence of a claim in 1986 by Merced County and gave counsel five days to search the record for such evidence. Counsel responded with Bart Paul's sworn declaration stating that Merced County had inspected leakage at the site in 1986. The district court then granted Federated's motion for summary judgment, subject to another grace period for Paul Oil to introduce evidence of a claim during the period the policies were in effect. In response Paul Oil submitted the declaration of Jeff Palsgaard, Director of the Division of Environmental Health of the county, stating that it was and had been Merced County's custom "to issue a letter demanding investigation and repair when evidence of a release from leaking underground storage tanks oc-

curred." Palsgaard, however, added that he had been unable to locate such a letter in 1986 to Paul Oil. He submitted a sample of the kind of letter the county would have sent if it had followed its usual custom. The court observed that it would take a quantum leap to infer from Palsgaard's letter that Merced County had actually made a claim in 1986 against Paul Oil. The court gave the plaintiff another 10 days to submit evidence that a claim had been made.

On March 15, 1995 Bart Paul filed a sworn declaration stating that *within a month after* the June 1986 leak Paul Oil "received a letter from Merced County requiring that we conduct an inspection *and* clean up of the subject property." (emphasis in Bart Paul's affidavit). Bart Paul stated he was unable to locate a copy of the letter. He also stated, "I was advised by Merced County that Paul Oil would be subject to enforcement action if these remedial steps were not taken" and that Paul Oil expended more than $5,000 "to comply with Merced County's dictates." Characterizing the evidence as "weak" the district court nonetheless found it sufficient to defeat summary judgment.

Federated moved for reconsideration on the grounds that Bart Paul's new declaration was a sham, contradicting his deposition testimony and his answers to interrogatories. In his December 14, 1990 telephone interview with Federated, Bart Paul stated that the only thing he knew about government actions against him was the November 1990 letter from the Merced County District Attorney. In Paul Oil's September 14, 1995 response to Federated's interrogatories it wrote in response to a request that it admit that the first claim made against it was the 1990 claim by the district attorney that "[t]here may have been a telephone call immediately prior to" the letter. In his October 13, 1995 deposition Bart Paul agreed that this letter was the "first written notice Paul Oil ... received from the ... District Attorney that it was claiming ... damages from" Paul Oil; that the district attorney's letter, the subsequent action by the California Regional Water Quality Control Board, and the civil suit by the Bergers were the only claims "made against Paul Oil for damages arising out of contamination" and that they "were made after" Paul Oil cancelled its policy with Fed-

erated; and that no claims were made against Paul Oil after it fixed its leaking fuel tank in 1986. All of these statements are contradicted by Bart Paul's assertion in his supplemental declaration that Merced County made a written demand that contamination be removed in 1986.

Federated also filed a new affidavit of Palsgaard stating: "We have exhausted every avenue of inquiry and discovered no information suggesting that we took any action at the site in 1986." David Block of the Merced County Department of Public Health provided an affidavit that the county's investigation of the site began in 1989, adding that its files were complete and that he had searched them and found no documentation supporting the suggestion that his office had commenced any investigation in 1986. A similar affidavit was sworn to by William Peeler, another county employee involved in the later investigation by the county. On October 9, 1996 the court granted reconsideration, finding that Bart Paul's second sworn declaration attempting to create an issue of fact had been a sham. No genuine issue of fact existed.

Paul Oil now moved for reconsideration of the finding that the declaration was a sham. Counsel for Paul Oil asked for 30 days to search for Pat Catanzarite, the maintenance man who had worked on the removal of the soil in 1986. When the court inquired why this witness had not been produced before, counsel replied "[w]e have a missing witness and have had for a long time .... [h]e is apparently somewhere in the area absolutely unlocatable. We have been trying literally for years to track him down."

Two days later Paul Oil obtained an affidavit from Pat Catanzarite that he remembered the alleged 1986 letter from Merced County. Federated took steps to determine whether Catanzarite had, in fact, been previously unlocatable. It took only minutes for Federated to locate him by using directory assistance and only a few minutes more to confirm that he had been at the same place for many years. Federated opposed the admission of his declaration on the grounds that it was not newly discovered evidence. The court agreed, holding that counsel for Paul Oil had

"disingenuously" informed the court that Catanzarite was "absolutely unlocatable." The court denied Paul Oil's motion for reconsideration and granted Federated summary judgment on all issues.

Paul Oil appeals.

*ANALYSIS*

By the terms of the pollution liability policies, Federated was liable only for claims made during the policy period. None of the claims made against Paul Oil in 1990, 1992, and 1994 fell within the policy periods of May 24, 1986–August 1, 1989. Paul Oil had no basis on which to bring its suit.

A second, independent reason existed why Paul Oil had no case. The farthest back any pollution liability policy covered was May 24, 1986. From the facts in Paul Oil's knowledge, the claims being advanced were for enormous gas spillages which could not have occurred in the four years Paul Oil occupied the premises. Keeping a close track of its inventory, Paul Oil was well aware that it never had spillages that could have amounted to 20,000 to 50,000 gallons of pollution. For this reason, too, its suit was baseless.

Whether the sham declaration of Bart Paul was prepared with the assistance of counsel and whether the statement about Catanzarite's unavailability was made by counsel because of inaccurate information supplied by others are matters we cannot determine on this appeal, but should be determined by the district court as they bear on the integrity of the bar.

**AFFIRMED.**